ABE BURGLASS No. 7556.

 VS.

DOLLY BOYD & al.

June 5th, 1919.

7556

CHARLES F. CLAIBORNE, JUDGE.

This is a suit for rent. The defense is that the defendant, the lessee, with the knowledge of the plaintiff, the lessor, rented the leased premises for the purpose of running a house of ill-fame - and did run such a house with plaintiff's knowledge.

The plaintiff alleged that by an act under private signature dated July 20th, 1917, he did, through his agent, Henry Gustner, lease to "Miss" Dolly Boyd the dwelling No. 1410 Canal Street for the term of 14 months commencing August 1st, 1917 and ending September 30th, 1918 at the rate of $100 per month payable in advance on the first day of each month evidenced by 14 rent notes made by the lessee to the order of herself; the rent for the whole unexpired term to become due should the lessee fail to pay at maturity; that the rent note due September 1st, 1917 had not been paid; that the defendant, without his consent, had moved the contents of the leased premises to 1027 Bienville Street. He prayed for a provisional seizure and for judgment for $1300 with lessor's privilege.

The defendant admitted the lease and the failure to pay the notes, but denied any indebtedness or that she had moved without plaintiff's consent. She further averred that the lease sued on was illegal, null and void, for the reason that the premises were rented to the defendant for the purpose of carrying on a house of prostitution out of the restricted district in violation of law and good morals, and that on August 25th, 1917, she was notified by the Mayor of New Orleans to remove from said premises within five days; that she did so remove and notified the plaintiff who accepted the keys and resumed possession of the property. Therefore she prayed for judgment in her favor rejecting plaintiff's demand and setting

456

aside the provisional seizure.

There was judgment in favor of the defendant rejecting plaintiff's demand, and he has appealed.

From the character of the defense it is necessary that it be established by evidence so complete as to "force itself upon the conviction with all the power of demonstration". 20 A., 1 (13), 47; 10 A., 199; 6 A., 317 (320); 27 A., 314.

The burden of proof is upon the defendant. 20 A., 47; 19 L. R. A., 662 (665).

The jurisprudence upon the question involved in this case has been vacⱷillating in this State and elsewhere since the beginning.

In Kathman vs. Walters, 22 A., 54, the Supreme Court decided that the hiring of a house to be used as a brothel was reprobated by law and could give rise to no cause of action. The decision was based upon no authority and two judges were absent.

But in Lyman vs. Townsend, 24 A., 625, the lease of a house for the same purpose within certain limits authorized by law was declared valid. In that case Kathman vs. Walters, 22 A., 54 was overruled. See p. 627; 30 Dalloz Rep. Leg. 284 & 50.

Following the Lyman case the Supreme Court decided that the vendor of furniture could recover the price of it, although he knew at the time of the sale that it was to furnish a house of ill fame. Hubbard vs. Moore, 24 A., 591; 25 A., 78; Sampson vs. Townsend; and 26 A., 108, Mahood vs. Tealza; 39 L. R, A. (N.S.) 1106.

But in Campbell vs. Gullo, 142 La., 1082 (1084), it was declared that the lease of a house to be used for purposes of prostitution could not be enforced although the house was situated within "the restricted district of the City"; and the court said that it could "not agree with the decision in Lyman vs. Townsend, 24 A., 625". The Court quoted American and French Authorities. Also 2 Elliott on Contracts & 739, 740, 745, 754, p. 92; 30 Dalloz Rep. Leg. p. 284 & 48.50; 1 Trop Louage & 302; 1 Guillonard p. 85 & 72, 197; 10 Dalloz Rep. Leg. Supp. p. 132 & 32; 3 Duvergier p. 57 & 58, 62; and in England, 16 R. C. L.

p. 573 § 48; 1 Story Equity § 298. *2 Merlin 328 IV*

There are many respectable authorities opposed to the views expressed in that case.

But under what conditions and circumstances is the lease null?

The authorities are not in harmony as to the rule which renders a contract void when it is entered into by one of the parties with intent to violate the law, and when such intent is known by the other party. 19 L. R. A., 664.

Some authorities hold that mere knowledge on the part of a lessor that the lessee intends to use the demised premises in violation of law is not sufficient to render the lease void; in order to have such effect, there must have been some active participation on the part of the lessor in the illegal purpose, and some profit derived directly from the illicit occupation. 19 L. R. A., 663 note; 39 L. R. A. (N.S.) 1104, 1107; 9 Cyc 571; 24 A., 591, 16 R. C. L., 573 §48.

Or at least the mere fear or suspicion on the part of the lessor that the lessee intended to violate the law would not be sufficient to debar his recovery. 19 L.R.A., (N.S.) 663.

On the other hand, the greater number of authorities, and those which we believe it behooves judges to follow maintain the doctrine that no action arises from a contract of lease when the lessor was aware at the time it was made that the leased premises were to be used for a purpose forbidden by law and when the premises were so used subsequently. C. C. 1893, 1895; C. P., 19; C. N., 1131, 1133; 18 Am. & Eng. Enc. Law p. 316, 379; 19 L. R. A.(N.S.) 663 note; 12 Fed. Cases No. 6629; 2 Cranch C. C., 161; 16 Ruling Case Law p. 570 § 45 et seq ; 39 L.R.A.,(N.S) 1104; 2 Elliott on Contracts p. 92 §745, 754; 13 C. J. p. 460 §402.

All are agreed, however, that to render the contract void, knowledge of the illegal purpose must be brought home to the lessor. 30 Dalloz Rep. Leg. 284 §49; 3 Duvergier p. 59; 3 Pothier Louage p. 241 §24.

It is established, as conclusively as such an occult and mystic fact can be, that the defendant ran an immoral house in

the premises rented by her.

Was the plaintiff aware at the time he consented to the lease that the defendant intended to run such an institution? We have concluded from the evidence that he was so aware, and we have arrived at that conclusion from the following established facts:-

Prior to renting the house 1410 Canal the defendant occupied the premises 1027 Bienville, where she had kept an assignation house for more than five years; plaintiff had visited her there "with the other boys", and he was aware of the character of the defendant and of the house she kept; at the time of making the lease, the plaintiff was in New York but was represented here by an agent; the defendant in an automobile with a female companion called in person upon the agent for the purpose of renting the house; she informed him that she was then occupying the house 1027 Bienville Street; she inquired of him who lived across the hall, and what kind of a woman she was, and whether she would have any trouble with her, and the agent answered that she was a Miss Rose ____, and that she was all right, that she was "a pretty good scout"; they could not agree upon the price as the defendant asked for a reduction; the agent then through a clerk telegraphed to the plaintiff that defendant, Dolly Boyd, naming her, desired to rent the house, but wanted a reduction; he communicated with plaintiff first by telegraph and then the second time by night letter; the plaintiff answered that the defendant could have the house on a lease with notes endorsed; he had no endorsers on any other tenants; the lease and notes were signed by the defendant with a surety who is represented as keeper of a barroom at the corner of Rampart and Iberville; and the defendant moved into the premises some time in July; on August 25th, 1917, she received an official notice from the Mayor that it had come to his knowledge that the house occupied by her was of the reprobated character denounced by City Oridnance No. 6701 N. C. S. and that she would have to move within five days; she called on plaintiff regarding this notice and showed it to him, and told him she would vacate; and he said nothing to her; *and showed no surprise,* she vacated on August 31 and took her

459

furniture back to 1037 Bienville; plaintiff filed this suit on September 12th. and provisionally seized defendant's furniture on Bienville Street.

We have abstained from quoting defendant's testimony which is much stronger in her favor. We have judged the plaintiff from his own lips and those of his agent.

Section 1 of Ordinance No. 6701 N. C. S. adopted August 2d, 1910 prescribes the limits of the restricted district, and Section 2 makes it unlawful for any person to rent any house to a lewd woman outside of those limits.

Article C. C., 1895 (1889) says that the cause of a contract is unlawful when it is forbidden by law.

The property 1410 Canal was out of the District, it was much too large to house "Miss" Dolly Boyd as she was described in the lease; her title indicated that she was not a "lady of family" as plaintiff says he thought; she could only intend the property as a lodging house; and her past occupation gave the assurance that she would continue in the same line of business; plaintiff knew who she was; and her residence at 1027 Bienville informed his agent of the same fact; she was required to give security, although she was to bring her furniture in the premises, when plaintiff did not require security of any other tenant; when the defendant showed the plaintiff her official notice to vacate, he expressed neither surprise nor indignation, and said nothing; he allowed the defendant to move away her furniture, and it was only twelve days afterwards that he filed the suit against her; neither the telegram nor the night letter is produced, nor is the clerk who sent them examined, nor is the plaintiff's answer to them filed, nor their absence accounted for. The plaintiff and his agent are both reticent in their testimony, and deny facts otherwise well established. The District Judge believed that both the plaintiff and his agent knew who the defendant was and what would be her occupat· ·n those premises. We cannot say that he erred.

His judgment is therefore affirmed.

June 5th, 1919.

*plaintiff took no steps to prevent her, although he kept a furniture store within*

460